IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville March 25, 2015

## STATE OF TENNESSEE v. TERRANCE E. KINDALL

**Direct Appeal from the Circuit Court for Rutherford County**
No. F-65499    David Bragg, Judge

_____

**No. M2014-01680-CCA-R3-CD – Filed July 7, 2015**

_____

The appellant, Terrance E. Kindall, appeals the Rutherford County Circuit Court's revoking his community corrections sentence for carjacking and ordering that he serve the balance of his sentence in confinement. Based upon the record and the parties' briefs, we conclude that the appellant was statutorily ineligible for community corrections. Therefore, the appellant's community correction sentence is vacated, and the case is remanded to the trial court for an evidentiary hearing to determine whether the illegal sentence was a bargained-for element of the appellant's plea agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Russell N. Perkins, Murfreesboro, Tennessee, for the Appellant, Terrance E. Kindall.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Shawn Puckett, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In December 2010, the Rutherford County Grand Jury indicted the appellant for aggravated robbery and carjacking. In March 2011, the appellant pled guilty as a Range II, multiple offender, which was outside his qualifying range, to carjacking, a Class B

felony.[1]   Pursuant to the plea agreement, he was to serve one year in confinement followed by fifteen years in community corrections. On June 9, 2014, the appellant's case officer signed a document titled "VIOLATION OF COMMUNITY CORRECTIONS" in which she alleged that the appellant had violated the terms of his community corrections by failing to report to her, by failing to pay court costs and fees as scheduled, and by failing to complete community service work.

At the appellant's revocation hearing, Amanda Farmer testified that she was the appellant's community corrections supervisor. In May 2013, the appellant admitted to violating his community corrections by failing a drug screen. Farmer said he was placed back in community corrections and ordered to "submit to relapse prevention in our office." The appellant completed the relapse prevention program. However, Farmer subsequently reported another violation of community corrections. She said that the appellant was supposed to report to her weekly and that he last reported on May 22, 2014. After not seeing him for two consecutive weeks, Farmer had a warrant issued for his arrest. Farmer said the appellant also was behind $340 on his fees and still had 35 of 200 community service hours to complete. She said that the appellant had missed home visits and that she "[j]ust constantly every week [had] to remind him what the rules of Community Corrections [were]."

On cross-examination, Farmer testified that prior to reporting the appellant's violation, she told him that she was going to "do a violation soon if he didn't get everything completed." After the appellant was arrested and went to jail, he sent her a letter in which he apologized for not reporting but told her, "I got scared and knew you were going to violate me. I didn't want to spend my birthday in jail, so I chose to stop coming and spend time with my family before I turned myself in."

The appellant testified that he stopped reporting to Farmer on May 22, 2014, but that he did so because she "threatened to violate me." The appellant said he lost his job and did not have the money to pay his fees, so he "simply, you know, stopped reporting." The appellant knew from his previous violation that it would take two weeks for a violation warrant to be issued and wanted to spend his "last birthday of freedom" with his family. The appellant's birthday was on June 11, and he turned himself in on June 17. He acknowledged that he had only 35 of 200 community service hours left to complete. He stated that he "needed the jail time" but that he "honestly didn't think it would go this far." The appellant said that if the trial court placed him back in community corrections or on probation, he was going to live with his parents. He said that his father had a job waiting for him and that "I know I can do better."

---

[1] The record reflects that the appellant also pled guilty to robbery, a Class C felony. However, only the judgment of conviction for carjacking is included in the appellate record, and neither the appellant's nor the State's brief provides any information regarding the robbery conviction.

On cross-examination, the appellant testified that he was supposed to pay Farmer $45 per month but that he lost his job and had his "priorities messed up." The appellant was employed at Checkers from May 2013 to May 2014 and lived with his parents for a while. However, he got behind on his fees when he moved out and began living on his own. He acknowledged that he chose not to report to Farmer.

At the conclusion of the appellant's testimony, the trial court noted that the appellant had entered a plea to a very serious charge and that he "was given an extraordinary opportunity by the State to be released based on a lengthy period of supervision through Community Corrections." The trial court also noted that this was the appellant's second violation and stated that "based on his repeated failure to succeed at release into the community, he is not a good candidate for release into the community." The trial court ordered that he serve his sentence in confinement with credit for time served.

## II. Analysis

The appellant acknowledges that he failed to report to his community corrections supervisor but contends that the trial court erred by ordering him to serve his sentence in confinement because he "committed only technical violations and did not commit any new offenses," completed his relapse prevention class, and "worked his public service hours down to 35 from 200 hours." The State argues that the trial court properly ordered that the appellant serve his sentence in confinement.

Although not raised by either party, the appellant is an offender who was not eligible for community corrections. He was indicted and convicted of carjacking by use of a deadly weapon. Carjacking is defined as "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . [a] deadly weapon . . . [or] . . . [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a)(1), (2). Persons convicted of felony offenses "involving crimes against the person as provided in title 39, chapter 13, parts 1-5" are generally ineligible for community corrections. Tenn. Code Ann. § 40-36-106(a)(1)(B); see State v. Charles Bradford Stewart, No. M2010-01948-CCA-CD, 2011 WL 4794942, at *3 (Tenn. Crim. App. at Nashville, Oct. 11, 2011).

We note that "[f]elony offenders not otherwise eligible for community corrections and normally considered unfit for probation because of chronic drug or alcohol abuse may still receive community-based punishment if the trial court finds that their special needs are treatable and best served in the community." State v. Corey Montez Rickman, No. M2006-02166-CCA-R3-CD, 2008 WL 426478, at *2 (Tenn. Crim. App. at Nashville, Feb. 14, 2008) (citing Tenn. Code Ann. § 40-36-106(c)). However, "to qualify under this 'special needs' subsection, the defendant must be statutorily eligible for probation." Id. (citing State v. Cowan, 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000)). By being convicted of a Class B felony, the appellant, who pled guilty as a Range II,

multiple offender, was required to serve a sentence of 12 to 20 years. <u>See</u> Tenn. Code Ann. § 40-35-112(b)(2).  Defendants who receive a sentence greater than ten years are ineligible for probation. <u>See</u> Tenn. Code Ann. § 40-35-303(a).  As a result, the appellant was ineligible for community corrections. <u>See</u> <u>Rickman</u>, No. M2006-02166-CCA-R3-CD, 2008 WL 426478, at *2.

Therefore, we vacate the appellant's sentence and remand the case to the trial court for an evidentiary hearing to determine whether the appellant's community corrections sentence was a material element of his plea agreement.  If the trial court answers that question in the affirmative, then the appellant is entitled to withdraw his plea and proceed to trial. <u>See</u> <u>Cantrell v. Easterling</u>, 346 S.W.3d 445, 456 (Tenn. 2011) (citing <u>Smith v. Lewis</u>, 202 S.W.3d 124, 129 (Tenn. 2006); <u>State v. Burhart</u>, 566 S.W.2d 871, 873 (Tenn. 1978)).  If not, then the trial court shall resentence the appellant.

### III.  Conclusion

Based upon the record and the parties' briefs, the appellant's community correction sentence is vacated, and the case is remanded for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE